UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN CHRISTO,

        Plaintiff,                  Case No. 5:15-cv-11589
                                     Judge Judith E. Levy
v.                                    Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 18) and GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 21)

I.     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 21),

and **AFFIRM** the Commissioner's decision.

II.     **REPORT**

        Plaintiff, Ann Christo, brings this action under 42 U.S.C. § 405(g) and 42

U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for supplemental security

income (SSI) benefits.  This matter is before the United States Magistrate Judge for

a Report and Recommendation on Plaintiff's motion for summary judgment (DE

18), the Commissioner's cross motion for summary judgment (DE 21), and the administrative record (DE 14).

## A.    Background

Plaintiff filed her application for SSI benefits on June 6, 2012, alleging that she has been disabled since October 14, 2009, at age 48.  (R. at 132-140.)  Plaintiff alleges disability as a result of chronic obstructive pulmonary disease (COPD), diabetes, spondylolisthesis, post-traumatic stress disorder (PTSD), depression, neuropathy, and liver disease.  (R. at 152.)  Plaintiff's application was denied on December 11, 2012.  (R. at 63-79.)

On January 2, 2013, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 86.)  ALJ Karen Sayon held a hearing on September 25, 2013, at which Plaintiff was represented by counsel and Vocational Expert (VE) Thomas Dunleavy testified.  (R. at 36-62.)  On October 24, 2013, ALJ Sayon determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 10-35.)

Plaintiff requested review of the hearing decision.  (R. at 6-9.)  On March 2, 2005, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ Sayon's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on May 2, 2015.  (DE 1.)

## B.    Plaintiff's Medical History

Plaintiff alleges in the field office disability report that she has been disabled since October 14, 2009.  (*See* R. at 147-150.)  Her medical records span the period from July 1, 2009 to September 13, 2013.  (R. at 220-711 [Exhibits 1F-17F].) Although the approximately 492 pages of medical records are comprised primarily of treatment records, these include the August 23, 2012 consultative examination by Terrance A. Mills, Ph.D., a licensed psychologist, which was apparently requested by the State of Michigan Department of Human Services (R. at 658-661 [Ex. 11F]), and the September 19, 2012 consultative examination by Maury R. Ellenberg, M.D., of Rehabilitation Physicians, P.C., to whom Plaintiff had apparently been referred by treating physician Steven Feldman, M.D. (R. at 663-665 [Ex. 12F]).  These will be discussed as necessary below.

### C.    Hearing Testimony

ALJ Sayon conducted a video hearing on September 25, 2013, during which Plaintiff amended her onset date to the March 28, 2012 filing date and at which Plaintiff and VE Dunleavy testified.  (*See* R. at 36-62.)  As the instant appeal presents a limited challenge to the ALJ's credibility determination, I will forego further summary of the testimony for the time being and only refer to it as necessary below.

### D.   The Administrative Decision[1]

ALJ Sayon rendered her decision on October 24, 2013.  (R. at 12-35.)  At **Step 1**, she determined that Plaintiff has not engaged in substantial gainful activity since March 28, 2012, the application date.  (R. at 17.)  At **Step 2**, the ALJ determined that Plaintiff has the following severe impairments:  COPD, diabetes mellitus with neuropathy, hoarseness, lumbar degenerative disc disease (DDD) and spondylolisthesis, PTSD, major depressive disorder, alcohol abuse in remission, cirrhosis of the liver, and obesity.  (R. at 17.)  At **Step 3**, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 17-19.)  At

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4); see also 20 C.F.R. § 416.920.  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.     Is the claimant engaged in substantial gainful activity?
    2.     Does the claimant suffer from one or more severe impairments?
    3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**Step 4**, the ALJ determined that Plaintiff had the RFC to perform the exertional limitations of light work, with some further postural, environmental, and mental health limitations, and further found that Plaintiff is unable to perform any past relevant work.  (R. at 19-29.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 29-30.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

5

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.    The ALJ's opinion is supported by substantial evidence.**

At the outset, the Court wishes to comment on the frustrating form of Plaintiff's motion for summary judgment. Namely, while the "table of contents" and single-capitalized argument appear to set forth the "issues presented" contemplated by E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs."), a close reading of the 4-page argument section's substance reveals fragments of several other sub-arguments. (*See* DE 18 at 5, 11-14.) This leaves the Court with a lack of clearly defined issues under its consideration.

In any event, although the single sub-heading at the beginning of Plaintiff's argument section appears limited to very broadly challenging the ALJ's Step 3 and Step 4 determinations, the body of this argument reveals more specific challenges to the ALJ's evaluation of: (1) the severe *physical* impairments under the listed impairments; (2) the physical and mental health limitations in the RFC, within which Plaintiff challenges (3) the ALJ's credibility assessment. (DE 18 at 11-14.) The Commissioner argues for affirmance, asserting that substantial evidence supports the ALJ's Step 3 determination and RFC finding. (DE 21 at 12-27.)

### 1.    The ALJ's Step 3 determinations as to Plaintiff's severe *physical* impairments should be affirmed.

At Step 2, the ALJ found that Plaintiff had several severe *physical* impairments, including COPD, diabetes mellitus with neuropathy, hoarseness,

lumbar DDD, spondylolisthesis,[2] cirrhosis of the liver, and obesity; nonetheless, at

Step 3, the ALJ found that Plaintiff's impairments or combination of impairments

do (does) not meet or medically equal the severity of one of the listed impairments.

(R. at 17.)  The ALJ paid particular attention to, among other listings, 1.04

("Disorders of the spine") and 5.05 ("Chronic liver disease") – the very listings she

claims were either ignored and/or inadequately evaluated (DE 18 at 11) - and

considered the opinions of the State Agency medical consultants, presumably the

September 3, 2012 opinion of George Starrett, Ed.D., and the December 7, 2012

opinion of Shahida Mohiuddin, M.D.  (R. at 17-18, R. at 71-79.)

      Plaintiff contends that the ALJ broadly rejected her *physical* impairments at

Step 3.  In particular, Plaintiff points to office treatment records from Dr. Steven

Feldman, M.D. (R. at 681-707 [Ex. 16F]) and one-time office treatment records

from Peter Bono, D.O. (R. at 708-711 [Ex. 17F]), claiming that "considering the

medical evidence the ALJ could have reasonably concluded that the Plaintiff

equaled the listing 5.05 for a 12 month period[,] "[t]he medical records describe

Plaintiff's condition as dire during a period of time where she would have clearly

met . . . listing [5.05][,]" and "[t]he medical records describe very severe back

problems that ought to be considered under listing 1.04, including the

---

[2] Spondylolisthesis is "[f]orward movement of the body of one of the lower lumbar
vertebrae on the vertebra below it, or on the sacrum."  Stedman's Medical
Dictionary 840330 (Nov. 2014).

recommendation for surgery." (*See* DE 18 at 11.)  Unfortunately, she fails to tell the Court how her general characterization of a "dire" liver condition or a recommendation of surgical intervention meet the specific listing requirements set forth in the regulations.

This lack of specificity, and other reasons discussed below, lead me to conclude that the Court should confirm the ALJ's Step 3 determinations as to Listing 1.04 and Listing 5.05.  First, the ALJ considered "all of the listings," paying particular attention to the ones Plaintiff expressly mentions.  (R. at 17.)  In so doing, she stated:  "the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (R. at 17-18.)  She also explained that she found "no evidence of listing level impairment with consideration given to the above listing(s) or any other listed impairment . . .[,]" and "the claimant does not manifest clinical si[gn]s and findings that meet the specific criteria of any listing."  (R. at 18.)

Second, to the extent the ALJ's Step 3 discussion of Plaintiff's severe physical impairments does not contain a detailed discussion of the criteria for those listings to which she paid particular attention (R. at 17-18), this, by itself, is not diminishing.  The Sixth Circuit has explained, albeit as to medical equivalency, "[t]he language of 20 C.F.R. § 404.1526 does not state that the ALJ must

9

articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). The ALJ did so here. Moreover, "the ALJ's factual findings are supported by substantial evidence[,]" and "[t]he plain language of the ALJ's opinion states that he considered all impairments." *Bledsoe*, 165 F. App'x at 411. In Plaintiff's case, as seemingly evidenced by a more than 4-page, detailed review of Plaintiff's physical medical records (R. at 21-25), the ALJ "made sufficient factual findings elsewhere in h[er] decision to support h[er] conclusion at step three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014). *See also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 (6th Cir. 2014) ("It also is proper to consider the ALJ's evaluation of the mental-health assessment of [Plaintiff] at other steps of [the] decision to determine how to credit the evidence at issue in this appeal.") (citing *Bledsoe,* 165 F. App'x. at 411).[3]

Third, even if the ALJ had failed to discuss the listings criteria in other portions of her decision, Plaintiff has not met her burden to successfully challenge the ALJ's Step 4 RFC determination. Other than referring to what appears to be

---

[3] *See also Johnson v. Comm'r of Soc. Sec.*, No. 14-11375, 2015 WL 5093321, at *9 (E.D. Mich. Aug. 28, 2015) ("Furthermore, he fully articulated his reasoning in portions of his opinion that did not directly address step three.").

Dr. Bono's surgical recommendation,[4] Plaintiff's general reference to 30 pages of medical records (R. at 682-711) is not the equivalent of illustrating to this Court how the evidence establishes that Plaintiff has met the numerous, specific criteria of the listings at issue.  (DE 18 at 11).  As the Commissioner correctly notes, "Plaintiff made no . . . demonstration that she met or equaled any Listing."  (DE 21 at 16.)  Indeed, she utterly fails to apprise this Court as to where in the record any "acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  (R. at 17-18; *see also* DE 21 at 14.)  Thus, she has not met her relative burden.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . .").[5]

---

[4] On September 13, 2013, Dr. Bono determined that Plaintiff was "a candidate for surgical intervention to treat a quality of life issue[,]" specifically a lumbar laminectomy and fusion.  (R. at 710.)  I further note, as did the Commissioner, that Dr. Bono "is not a 'treating physician,' for he saw Plaintiff only once, just two weeks before Plaintiff's hearing."  (*Compare* DE 21 at 21-22, DE 18 at 12-13); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("Smith's contacts with Martin and Shah fail to evince the type of ongoing treatment relationship contemplated by the plain text of the regulation."), 20 C.F.R. §§ 404.1502, 416.902.

[5] The Court is being generous in this regard.  Issues "'adverted to in a perfunctory manner,'" – as they are here – may be "'deemed waived.'"  *McPherson v. Kelsey*,

**2.    Substantial evidence supports the ALJ's determination that Plaintiff's RFC includes certain physical and mental health limitations, as contemplated by SSR 96-8p.**

Plaintiff contends that the ALJ's Step 4 RFC determination does not "accurately portray" Plaintiff's physical and mental health impairments.  (DE 18 at 12, 14.)  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P (S.S.A. July 2, 1996).  According to Plaintiff, "the ALJ never complied or even attempted to reconcile [SSR] 96-8p with h[er] decision."  (DE 18 at 14.) For the reasons that follow, the Court should disagree.

**a.    Physical RFC limitations (exertional, postural and environmental limitations)**

Plaintiff contends that the ALJ erred in her evaluation of Plaintiff's physical limitations, with seeming reference to the exertional and/or postural limitations. (DE 18 at 12-13.)  By way of background, *exertional limitations* include lifting, carrying, standing, walking, sitting, pushing and pulling.  *See* 20 C.F.R. §§ 404.1545(b), 416.945(b).  *Postural limitations* include climbing, balancing, stooping, kneeling, crouching and crawling.  (*See* R. at 74-75.)

---

125 F.3d 989, 995 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-294 (1st Cir. 1995)).

As previously noted, the ALJ determined at Step 4 that Plaintiff was **(i)** exertionally limited to light work, and **(ii)** posturally limited to no climbing ladders, ropes, or scaffolding and occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs.  (R. at 19; *see also* R. at 25, 29.)  In addition, the ALJ cited state agency reviewing physician Shahida Mohiuddin, M.D.'s December 7, 2012 opinion - that Plaintiff was capable of performing the exertional limitations of light work with certain postural limitations (occasional climbing, balancing, stooping, kneeling, crouching and crawling) - and assigned "great weight" to it.  (R. at 29, 74-75; *see also* R. at 77-78, 20 C.F.R. §§ 404.1567(b), 416.967(b).)

Plaintiff takes issue with the ALJ's conclusion that, since September 2012, Plaintiff "has had minimal treatment and minimal examination findings . . .[,]" claiming that it minimizes Plaintiff's impairments and is simply inaccurate.  (DE 18 at 12-13, R. at 25.)  Specifically, she mentions:

- The September 11, 2012 x-ray of the lumbosacral spine, which revealed scoliosis at the level of L2-3, advanced degenerative changes, and Grade 1 spondylolisthesis involving L5 on S1 (R. at 703 [Ex. 16F])

- that an April 26, 2013 stress/rest perfusion scan was terminated due to fatigue (R. at 706-707 [Ex. 16F])[6]

_____

[6] The Commissioner points out that this is hardly unusual in cardiac stress tests. (DE 21 at 21 (citing Ann Bovin, *et al.*, *Myocardial Perfusion Imaging in Patients with a Recent, Normal Exercise Test,* World J. Cardiol., 2013 Mar. 26; 5(3): 54-59

- The September 13, 2013 progress notes of Dr. Bono, who opined Plaintiff was "a candidate for surgical intervention to treat a quality of life issue." (R. at 708-711 [Ex. 17F])

(DE 18 at 12-13.) Instead, Plaintiff claims she "has had extensive treatment and has done everything recommended by her doctors . . . ." (DE 18 at 13.)

Nonetheless, the Court should conclude that the ALJ properly accounted for Plaintiff's *related physical* conditions, presumably COPD, lumbar DDD and spondylolisthesis, and perhaps even her obesity. For example, the ALJ acknowledged key pieces of evidence, such as:

- Plaintiff's September 25, 2013 hearing testimony regarding her diagnosis of COPD following a 2009 house fire (R. at 21, *see also* R. at 47)

- Several diagnoses of COPD (R. at 23-24, *see also* R. at 691-692, 693-694, 695-699 [Ex. 16F], 666-667 [Ex. 13F])

- Evidence or diagnosis of degenerative change(s) (R. at 22-24, *see also* R. at 703, 705 [Ex. 16F], 663-665 [Ex. 12F])

- Evidence or diagnoses of spondylolisthesis (R. at 22-24, *see also* R. at 703 [Ex. 16F], 663-665 [Ex. 12F], 666-667 [Ex. 13F], 708-711 [Ex. 17F])

Moreover, the ALJ remarked that Plaintiff "has gained weight recently and is now just above the BMI cusp for obesity[,]" likely referring to Dr. Feldman's notes from November 16, 2012, December 18, 2012 and July 16, 2013.

---

("All patients terminated the exercise test because of exhaustion or muscle fatigue.")).

(R. at 25; *see also* R. at 23-24, 691, 693, 700.)  In addition, the ALJ expressly set forth her reasons for including the above-mentioned exertional, postural and environmental limitations:

> . . . as a result of the *combination of her physical impairments*, I have limited the claimant to light work with no climbing of ladders, ropes, or scaffolding; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs.  Due to her [*COPD*], the claimant can have no concentrated exposure to temperature extremes, humidity, respiratory irritants, heights, or hazards.

(R. at 24-25 (emphases added).)  In other words, the ALJ expressly addressed Plaintiff's COPD by including several environmental limitations and expressly addressed the combination of her physical impairments (presumably including Plaintiff's COPD, lumbar DDD and spondylolisthesis, and seemingly her obesity) by including exertional and postural limitations.  The ALJ here can hardly be accused of having ignored the record, and Plaintiff is not entitled to have the Court reweigh the evidence in her favor on appeal.  *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004) ("We may not reweigh conflicting evidence on appeal, but instead must affirm Judge Davis's decision because substantial evidence supports it.").

Thus, the Court should conclude that the ALJ's determination that Plaintiff has the RFC to perform the exertional requirements of light work with the foregoing postural and environmental limitations is supported by substantial evidence.

15

**b.    Mental health RFC limitations (routine, repetitive tasks; simple instructions; occasional changes in the workplace setting; and occasional interaction with the public, both in person and over the phone)**

Plaintiff also challenges the ALJ's assessment of her mental health limitations.  (DE 18 at 13-14.)  "When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."  20 C.F.R. §§ 404.1545(c), 416.945(c).

As noted earlier, the ALJ concluded at Step 2 that Plaintiff had the severe mental health impairments of PTSD, major depressive disorder and alcohol abuse in remission.  (R. at 17.)  At Step 3, the ALJ determined that Plaintiff has moderate difficulties with regard to CPP.  (R. at 18.)  At Step 4, the ALJ determined that Plaintiff's RFC included certain mental health limitations, specifically limiting Plaintiff to:  **(i)** "routine, repetitive tasks," **(ii)** "simple instructions," **(iii)**

"occasional changes in the workplace setting[,]" and **(iv)** "occasional interaction with the public, both in person and over the phone."  (R. at 19, 28.)[7]

In arriving at this determination, the ALJ relied, at least in part, upon the September 3, 2012 opinions of state agency reviewer Dr. Starrett.  (R. at 29, R. at 71-73, 75-77.)  By way of background, state agency reviewer Dr. Starrett concluded that Plaintiff has moderate difficulties in maintaining concentration, persistence or pace (CPP).  (R. at 72.)  Relatedly, Dr. Starrett's mental RFC assessment included limitations in "concentration and persistence," such as moderate limitations in her abilities to "maintain attention and concentration for extended periods[,]" "complete a normal workday and workweek without interruptions from psychologically based symptoms," and "perform at a consistent pace without an unreasonable number and length of rest periods[,]" ultimately noting that Plaintiff retains the RFC to perform "simple[,] [repetitive] tasks."  (R. at 76.)  Dr. Starrett included these limitations to account for Plaintiff's "mood disorder."  (*Id*.)[8]  The ALJ assigned Dr. Starrett's opinion "great weight," explaining that it is "consistent with the evidence as a whole."  (R. at 29.)

---

[7] The ALJ specifically explained that the latter limitation was based on Plaintiff's hoarseness.  (*See* R. at 24-25.)

[8] It appears that, at some point during his review, state agency mental health consultant Dr. Starrett accorded "great weight" to the August 23, 2012 consultative examination report of licensed psychologist Dr. Mills.  (*See* R. at 74, 658-661.)

Plaintiff seems to contend that the ALJ committed error by assigning non-examining Dr. Starrett's opinion "great weight" but not incorporating each of its limitations into the RFC, which, in turn, casts doubt upon the accuracy of the RFC's portrayal of Plaintiff's limitations. (DE 18 at 12-14.)[9]  In particular, Plaintiff appears to contend that the ALJ omitted one of Dr. Starrett's concentration and persistence limitations from the RFC determination, namely, her moderate inability "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (DE 18 at 13, R. at 76.)

However, the Court should conclude that the ALJ's mental health RFC adequately addresses Plaintiff's mental health conditions.  To begin, the state agency reviewer's assessment of the "B" criteria of the listings is consistent with the conclusions reached by the ALJ at Step 2 – namely Dr. Starrett opined and the ALJ determined that Plaintiff was *mildly restricted* in activities of daily living, had *mild difficulties* in maintaining social functioning, had *moderate difficulties* in maintaining CPP, and had *no* repeated episodes of decompensation, each of

---

[9] Here, it is worth mentioning that, although Plaintiff's motion states, "[t]he ALJ's failure to give specific reasons and explain precisely how those reasons affected the weight accorded the opinions is a legal error requiring reversal[,]" (DE 18 at 11), the motion does not include a developed challenge to the ALJ's assignment of weight to the opinion evidence, other than the aforementioned criticism that the ALJ failed to include all of Dr. Starrett's limitations.

18

extended duration.  (*See* R. at 18, 72.)  Stating what limitations a claimant has – as

was done here – is "exactly what an RFC does."  *Gower v. Comm'r of Soc. Sec.*,

No. 13-14511, 2015 WL 163830, at *23 (E.D. Mich. Jan. 13, 2015).

Plaintiff's challenge to the ALJ's mental health RFC assessment seems to

loosely argue that the ALJ's various mental health limitations do not appropriately

address her severe mental health impairments - presumably her PTSD, major

depressive disorder and alcohol abuse in remission.  More specifically, Plaintiff

seems to argue that the ALJ has not appropriately addressed what Dr. Starrett

opined were "moderate" restrictions in CPP.  (DE 18 at 13, R. at 72, 76).

However, it is clear to this reviewer that the ALJ did adequately consider

Plaintiff's moderate restrictions in CPP.  First, in her Step 3 review of the

"paragraph B" criterion of CPP, the ALJ observed:  "the claimant has alleged

difficulty paying attention and problems with changes in routine.  A[t] an

examination in February 2013, the claimant displayed intact memory, and she was

able to gain and maintain attention (Exhibit 15F [R. at 680])."  (R. at 18.)  Second,

at the conclusion of her review of the mental health medical records, the ALJ

stated:

> The overall evidence reveals that the claimant reports a long history of
> [PTSD] and depression.  Prior to the period at issue here, the claimant
> witnessed a motor vehicle accident with multiple fatalities in 2007.
> Around October 2009, she overdosed and was hospitalized after she
> suffered a miscarriage.  The claimant was drinking heavily at that
> time.  The claimant started treatment with Comprehensive Psychiatric

Services in March 2011 and has pretty much been maintained on the same medications since then - Ambien 12.5 mg and Remeron 30 mg, with very minimal adjustments made to her medications. The claimant is seen every couple of months and is often noted to have a bright mood. The claimant's GAF was initially 50 and has increased thereafter, showing improvement with therapy and medications, with much of the focus of her treatment on family dynamics. *As a result, I find she has the mental capacity to maintain sufficient concentration, persistence, or pace to appropriately and timely complete routine, repetitive tasks. The work should involve simple instructions; occasional changes in the workplace setting; and occasional interaction with the public.*

(R. at 28 (emphasis added).) Thus, it cannot be said that the ALJ failed to comply with the narrative discussion requirement of SSR 96-8p.[10]

In addition, although Plaintiff lists some details of Dr. Starrett's opinion regarding certain concentration and persistence limitations set forth in the mental RFC assessment (DE 18 at 13, R. at 76), Plaintiff has not shown how the aforementioned four mental health limitations (routine, repetitive tasks; simple instructions; occasional changes in the workplace setting; and occasional interaction with the public, both in person and over the phone) included in the RFC fail to address Plaintiff's conditions and their related symptoms; thus, she has not met her relative burden. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th

---

[10] Here, I note that Plaintiff does not appear to challenge the accuracy of the ALJ's interpretation of the *mental health* medical records. Instead, Plaintiff's claim about the ALJ's inaccuracy appears related to the ALJ's interpretation of the *physical* medical records as "minimal treatment and minimal examination findings . . .[,]" (DE 18 at 12-13, R. at 25), although, as discussed above, she does not definitively show how this factual finding constitutes reversible error.

Cir. 2003) ("Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . .").

### 3. The ALJ properly discounted Plaintiff's credibility in accordance with 20 C.F.R. §§ 404.1529(c), 416.929(c) and SSR 96-7p.[11]

The ALJ concluded that Plaintiff's "symptoms and complaints are not supported by objective findings[,]" and further noted:  "[d]isability findings cannot be based solely on her subjective complaints or her hearing testimony.  While the evidence establishes some limitations, overall she would still be capable of performing light unskilled work on a sustained basis with additional limitations." (R. at 28.)  Here, Plaintiff argues that the ALJ "never evaluates the claimant's subjective complaints" in accordance with SSR 96-7p.  (DE 18 at 13-14; *see also* 20 C.F.R. §§ 404.1529(c)(2),(3), 416.929(c)(2),(3).)  The Court should conclude otherwise.

To begin, throughout Step 4, the ALJ discussed Plaintiff's medical records, ultimately concluding that "the claimant's symptoms and complaints are not supported by objective findings."  (R. at 21-28.)  Thus, the ALJ considered the "objective medical evidence" as permitted by 20 C.F.R. §§ 404.1529(c)(2),

---

[11] SSR 96-7 was superseded by SSR 16-3p, effective March 2016.  *See* SSR 16-3P, 2016 WL 1119029 (S.S.A. Mar. 16, 2016), 2016 WL 1237954 (S.S.A. Mar. 24, 2016).

416.929(c)(2).  Also, citing Plaintiff's disability report, the ALJ noted that Plaintiff

"stopped working in January 2003 because she was getting married and moving to

New Jersey, completely unrelated to her alleged impairments (Ex. 2E [R. at 151-

162])."  (R. at 28.)[12]  Thus, she considered "other evidence" in the form of

Plaintiff's "prior work record."  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In addition, at Step 3, the ALJ concluded that Plaintiff has mild restriction in

activities of daily living (ADLs).  (R. at 18.)  At Step 4, the ALJ again considered

Plaintiff's ADLs.  (R. at 28-29.)  In so doing, the ALJ appears to have relied upon

Plaintiff's sister's representations that Plaintiff watches television all day, goes to

doctor appointments and does not do household chores (R. at 168-169 (Ex. 3E));

the Plaintiff's apparent testimony that she does not help with household chores (R.

at 49, 52); the "activities" section of Dr. Mills's August 23, 2012 consultative

examination report, such as Plaintiff's reports of going on appointments and

watching television "most of the day," but not doing household chores (R. at 659

(Ex. 11F));[13] and various records from Dr. Feldman regarding diet and exercise (R.

---

[12] Consistent with this observation is Plaintiff's work history report, wherein she claims her jobs "in the 15 years before [she] became unable to work[,]" included Masco Corporation from 1984 to 1999 and Home Depot from 2002 to 2003.  (R. at 193.)

[13] This particular record also states that, "claimant is able to independently care for her hygiene and grooming needs…and feels she is able to independently manage her own financial matters[,]" while making further observations of "good hygiene and grooming[,]" as well as responses which "were spontaneous, clear, on target,

at 619-620 [Ex. 8F], 683-684, 687-688, 691-692, 700-702 [Ex. 16F]).  (*See* R. at

20-24, 27.)[14]  Thus, the ALJ considered Plaintiff's daily activities.  20 C.F.R. §§

404.1529(c)(3)(i), 416.929(c)(3)(i).[15]

The ALJ also considered Plaintiff's claims of pain.  In doing so, the ALJ

expressly acknowledged:  **(a)** Plaintiff's report of "lower back pain," (R. at 203

[Ex. 7E]); **(b)** Plaintiff's sister's July 2, 2012 report that Plaintiff "lives [with]

constant pain," and has problems getting along with others, in part due to pain (R.

at 167-172 [Ex. 3E]); and, **(c)** Plaintiff's September 25, 2013 hearing testimony

about back pain (*see* R. at 45-46).  (R. at 20.)  Then, the ALJ mentioned "pain"

several times within her review of Plaintiff's physical medical records, including,

but not limited to:

- consultative examiner Dr. Ellenberg's September 19, 2012
  diagnoses of "low back pain," with "[u]nderlying
  spondylolisthesis and lumbosacral degenerative change[,]" and
  an explanation that "[a]t this point, pain must be considered
  mostly myofascial and nonspecific possible sacroiliac
  mediated[;]" (R. at 22-23, 662-665 [Ex. 12F]);

---

of adequate depth, and [which] displayed no circumstantial or tangential
tendencies." (R. at 659.)

[14] I also note that the ALJ observed:  "Her blood sugars are still high and her
doctors have repeatedly told her to do a better job with exercising and diet."  (R. at
25.)

[15] "As a matter of law, an ALJ may consider household and social activities in
evaluating complaints of disabling pain."  *Blacha v. Sec'y of Health & Human
Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

23

- Dr. Ellenberg's January 7, 2013 diagnoses of myofascial back pain, underlying spondylolisthesis, COPD and diabetes mellitus (R. at 23, 666 [Ex. 13F])

(*See also* R. at 21-24.)  After her review of the physical medical records, the ALJ addressed Plaintiff's back pain before assessing exertional and postural limitations. (R. at 25.)[16]  In the end, with respect to credibility, the ALJ stated:  "[t]he claimant complained of extreme back pain; however, this is not supported by the treatment records of very little treatment and relatively normal examination findings, other than some reduction in range of motion."  (R. at 28.)  Thus, the ALJ considered "[t]he location, duration, frequency, and intensity of your pain or other symptoms[.]"  20 C.F.R. §§ 404.1529(c)(3)(ii), 416.929(c)(3)(ii).

Furthermore, the ALJ noted that Plaintiff "saw Dr. Feldman on July 16, 2013, alleging worsening of her back pain from bending over 5 days earlier[.]"  (R. at 24, Ex. 15F (R. at 680); l6F/2 (R. at 681-682), 20-22(R. at 700-702).)  Thus, the ALJ considered "precipitating and aggravating factors," as contemplated by 20 C.F.R. §§ 404.1529(c)(3)(iii), 416.929(c)(3)(iii).

---

[16] In addition, Plaintiff is incorrect that "[f]atigue is never discussed by the ALJ." (DE 18 at 14.)  In fact, within the Step 4 discussion of Plaintiff's mental health records, the ALJ specifically referred to the following sentence from Dr. Hazan's March 2011 mental status examination:  "[h]er Beck Depression Inventory score is a total of 38 with significant anhedonia, loss of interest, feels worthless, diminished energy, insomnia, fatigue, and 'too tired to do most of the things I used to do,' diminished libido, unable to concentrate, increased appetite most likely secondary to treatment with Remeron."  (R. at 26, R. at 655 [Ex. 10F]).

Moreover, at the hearing, when asked about medication side effects, Plaintiff testified that she experiences upset stomach, diarrhea, and memory issues, although she was not sure what was causing these symptoms, because she takes so many medications.  (R. at 49.)  At Step 4, the ALJ expressly relied upon several mental health records that specifically commented on side effects:

- Plaintiff's April 12, 2010 report that she "never started the Elavil, because she was worried about side-effects."  (R. at 552.)

- Citing several records from Toby Hazan, M.D. of Comprehensive Psychiatric Services, P.C., the ALJ stated, "[t]hroughout 2011, the claimant was continued on Remeron 30 mg and Ambien CR 12.5 mg without any reports of side effects (Ex. 10F/6-13 [R. at 645-652])."

- Citing several records from Dr. Hazan dated 2012 (*see* R. at 640-644, 678-679), the ALJ stated, "[a]gain the claimant was continued on Remeron 30 mg and Ambien CR 12.5 mg without any reported side effects."

- Dr. Hazan's February 22, 2013 notes that Plaintiff's medications include Remeron 30 mg and Ambien CR 12.5 mg, she is compliant with the medication as prescribed, she has experienced moderate improvement in response to medication, and she denied side effects / adverse reactions (R. at 675-676)

(R. at 26-27.)  Ultimately, the ALJ stated:

At the hearing, the claimant complained of numerous side effects from her medications; however, these were not reported to her physicians.  None of the progress notes reveal any notations related to side effects.  Specifically, Dr. Hazan noted that the claimant had no side effects to the Remeron and Ambien.

(R. at 28.)  Thus, the ALJ considered the "type, dosage, effectiveness, and side effects" of Plaintiff's medications, consistent with 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).  He was further permitted to consider inconsistencies between her testimony and the medical record in evaluating her credibility.  *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).[17]

The ALJ in this case clearly discussed many, if not all, of the criteria set forth in the 20 C.F.R. §§ 404.1529(c)(2),(3), 416.929(c)(2),(3) factors.  Moreover, "'[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis.'"  *Maralason v. Comm'r of Soc. Sec.*, No. 15-CV-11666, 2016 WL 5405302, at *8 (E.D. Mich. Sept. 28, 2016) (quoting *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases)).  Having considered these factors, the ALJ discounted Plaintiff's credibility.  (R. at 28-29.)  This credibility finding was well-supported and well-reasoned, and the standard of review requires that it be given deference.

### G.    Conclusion

---

[17] I also note the ALJ's mention of the rehabilitation physician's (Dr. Ellenberg's) September 19, 2012 recommendation to place Plaintiff "through a *brief* therapy program[,]" and January 7, 2013 note that Plaintiff "was unable to start the therapy because of the co-pays."  (R. at 22-23, 664, 666, 670 (emphasis added).)  Even if the Court does not treat this as evidence of "[t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms[,]" 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v), Dr. Ellenberg's recommendation of *brief* therapy suggests that Plaintiff's condition was not too severe.

I conclude that:  **(a)** the ALJ's Step 3 findings should be affirmed; **(b)** substantial evidence supports the ALJ's RFC determination; and **(c)** the ALJ properly discounted Plaintiff's credibility in accordance with 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 18), **GRANT** Defendant's motion for summary judgment (DE 21), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: November 22, 2016            s/Anthony P. Patti
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on November 22, 2016, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case manager for the
                                    Honorable Anthony P. Patti

28